Our first case this morning is case number 4190118, Carolyn Webb v. Richard Lightsey. For the appellant, we have Mr. Passwater, and for the appellee, Ms. DeSainte-Fallon. I don't know if you... I know I didn't... DeSainte-Fallon. DeSainte-Fallon? Yes. All right. Thank you. You may proceed, counsel. Good morning. May it please the Court, counsel. I'm Randy Passwater. I'm the attorney for Mr. Lightsey. I was last before this Court on a similar appeal. The same parties were, as stated in the brief, we went back down to the trial court. And in the trial court, Ms. Webb, the petitioner, took the position that this Court's previous ruling, its appellate court rule 23 order, was binding in a very narrow basis ruling. That the trial court had no discretion as it relates to determination of Mr. Lightsey's income. I, on behalf of Mr. Lightsey, in that trial court proceeding, said no. That the plain language of this Court's appellate court rule was for a global recalculation of Mr. Lightsey's income. And that the trial court should have then gone into the issues that are shown in the record as it relates to that income. And so this case is now back before this Court in that the trial court erred in determining that the mandate of this Court was exceedingly narrow. And I've gone through in detail in the brief in terms of statements by the trial court judge, Judge Davis, in which he stated that the court district has determined his income. Why should I do that? And his ruling, when it is actually done, is clear that it, instead of going through Mr. Lightsey's income and looking at the facts and evidence, and specifically the exercise cost of the stock options in question, the tax consequences, the actual tax returns of Mr. Lightsey. Instead of doing that, Judge Davis simply adopted the position of Ms. Webb, used some thin-plan calculations of taxes, which are not based in the evidence at all, did not use any exercise costs as it relates to the options, and came up ultimately with a child support number that was above the child support number that this Court issued in the Rule 23. Let's back up, Counsel. You say that the Court took a narrow view and didn't do a global recalculation. But he didn't adopt the number we came up with, right? Right. So he obviously put some thought into it and modified what we came up with. Well, and so that's a good point. The reason that the very first analysis that I do in the first part of this is say, well, the trial court, you did something different than the appellate court. If that's not the case, then you must have said, I have to do a global recalculation. That's the only way you can come to a different number. And so if you're going to do a global recalculation, then you have to look at the evidence. So that's where it's either one or the other. And then we come to the situation where the parties agreed that the trial court didn't need to hear any additional evidence and would base its decision on what was before it, correct? Exactly correct, Judge. And so that is determinative not just against my client, but against Ms. Webb. So how is it if that is the standard? If the trial court says there's going to be no new evidence and both parties say no new evidence, and we go on the record, then they put in new fin plan calculations on their side. That's all new evidence. All the calculations of what the taxes are, that's all new evidence. They could have somehow used new evidence, and my client doesn't. That is further error in this case. Counsel, I'm not sure I understand. When you say it's new evidence, aren't these calculations based upon the evidence that had previously been presented? Actually, no. The fin plan that was presented was after this court ruled Ms. Webb, on a motion for rehearing, generated some fin plan calculations, which are calculations of tax in the hypothetical. And those taxes, those calculations, do not relate to the evidence. Let me be more clear. I don't think it was clear. On remand, there was no new evidence presented by either party, was there? Correct. Well, then essentially on remand, the parties were arguing what the record had been before, and their argument on calculation, didn't they? So in the evidence, there is, for example, from my client, Mr. Leitze, the stock options that he exercised, the income, we have in evidence the exercise cost. They're right there. They're shown. And so on remand, I presented those and said, you know, under the statutory factors you have to consider, 5505AH, you have to consider the cost. And the trial court just ignored that. That's ignoring a statutory factor the court has to consider, and it has the exclusive judicial function to do. You can't just take in a child support context parties' agreements. Why do you think the trial court ignored it? Did it say, I'm ignoring this? Yes, in its calculation, it clearly is ignored. It's not shown. See, we hear this a lot from lawyers who are saying the trial court ignored something or didn't consider something. Unless there's some affirmative evidence that that's what happened, it may be the trial court considered it, wasn't impressed by it, and didn't feel the need to comment about it. Judge, if you look at the calculations that were adopted by the trial court, it has very clear statements of what the income was, and in those income there's no way that the trial court considered it because it's just not shown. It clearly wasn't considered by the trial court. I don't see how any other conclusion makes any sense in the context of what's actually there. Was this deduction argued initially before it came to us the first time, these deductions, the cost basically of exercising the stock options? I believe it was, and I understand that the appellee says it wasn't. I valued the stock options at zero, and the reason I did that in the very beginning was because of the exercise cost, because there was no gain to this person. And I think that's consistent with the evidence, that's consistent in the consistent position throughout this, that those stock options did not result in material gain. They had exercise cost. The timing of them is such that they coincide exactly with tax payments that were made. This gentleman, very simply, if you just use income as the new theory was, and that income was never before this court before, the income tax number, they used a completely different figure when we were here last time. They used some kind of averaging on deposits into a checking account or into an investment account. And then on remand, then they used, well, we're just going to use box one, W-2 income. But that's not the law. The Supreme Court in Rogers says if we don't just look at what the tax implications are to get to income, we have to evaluate that and see is it a gain. And that's the Supreme Court case on the graph as well. And the trial court found that the exercise of the stock options constituted income. Do you disagree with that? I don't disagree with that. And so that issue, to be clear, in the initial round of briefs in the original trial court. Well, counsel, slow down just a second here. So the fact that the trial court made that finding, doesn't that suggest that the trial court did consider your argument regarding the cost of exercising the stock options and rejected it? No. And the reason is because the finding of income, income could be $1 or it could be $1,000. In this case, it's $7,000 or $8,000. And so if I'm valuing it at zero or one, the trial court still has to set a value for that number. So the trial court, it just simply refused to allow my client to present any evidence as to what that was and ignored it entirely, the context of these transactions and what the record actually shows. Refused to allow your client to present any evidence? I thought the agreement of the parties was that the trial court would rule based on the evidence previously presented. I misspoke. The original, when we went back, in the record is these costs, these exercise costs. In the record is this income. There's really no need, in my opinion, for the court to infer new evidence at that stage because the record was there. The taxes, to use a thin plan, you're just ignoring what the actual taxes are because we have the actual tax returns for 2014, 2015. We have that evidence there and it's just completely thrown out in favor of some thin plan calculation that doesn't do that. So what the trial court should have done on remand was it needed to look at and do what this court said. It needed to do a global recalculation of Mr. Lightsey's income. And it didn't do that, but it ignored the evidence by not making any determination as to the exercise of these options when they were. They're just ignored, and then the calculations that are actually generated then do not follow the evidence at all. They don't, on the income side, show that they include exercise costs when they should not, when it's a statutory factor and that's what the evidence says. And it, on the deduction side, takes out taxes that are completely made up numbers. They don't have anything to do with what the actual taxes were that were paid. So when the appellate court said to do a global recalculation, the trial court should have made findings that were consistent with the evidence. So even if this court says, we're going to say that Judge Davis complied with the mandate, you still would look at whether there's an abuse of discretion, and there is in this case. There's an abuse of discretion because the actual calculations that then follow do not comply with the AH, the deduction. They don't calculate or include any exercise costs which is shown to be paid, which is extremely substantial in this case, number one. And then number two, on the deduction side, again, they don't include any actual, what the taxes are. The taxes were much, much higher than what's actually shown in the calculation that is done. Well, counsel, another aspect of this argument is the fact that opposing counsel says, well, the court didn't consider the cost of exercising the stock options with the initial order that you appealed the first time. And that in that appeal, you didn't file a cross appeal challenging the fact that the court originally did not consider the cost of exercising the stock options, and therefore, you shouldn't be allowed to raise that now. And it's a good point, and let me address it this way. Number one, when we were here, I recall you asking me very pointedly, counsel, do you agree with the calculation, the net income calculation? And I said to this, I agree with the deviation. I have no recollection of that, but I'll take your word for it. I went back and I looked. The oral argument that was done, it's very similar to see the issues. But I said, no, I agree with the amount of deviation. And the reason I answered it that way is because the issue for me on appeal would have been not only did the trial court err in the initial calculation, but then it could still have been affirmed because the deviation number was still within the realm of the court's discretion, if that makes any sense. But the bottom line is you didn't appeal that. I participated in the appeal, and I raised these issues throughout. I've always done that. And in terms of that, I think... You raised the exercise cost issue throughout? I went through the reply brief, and I cited specific points in a brief call throughout that I've always identified those statutory sections. And I've always made the arguments of those costs. The reply brief has specific citations in the record for each and every brief that's been done and has specific quotes, I think, that I've gone through where I've said those. And back to the issue of what was raised or waived. I take the position, you know, there is a provision that, you know, waiver doesn't apply to things that weren't actually decided. And so on that first appeal, I don't know that at the end of the day that was the issue for me, was that this is the exact way it's done. It's the end number of what child support was. And so specifically as it relates to the current number of support, I would say that that wasn't decided. But even if this court finds that's the case, even if they say, okay, you waived that as the current support, we still have the issue of retroactivity, which was certainly not decided by this previous appeal. The retroactive aspect of this case is there was no calculation of retroactive. The initial appeal said that there was no retroactive before March 1, 2016. It wasn't that he just cut it off. He said, okay, there's this large section of time where my client wasn't working. He was just selling stock options to pay his bills, which I said is not income, I think, under McGrath and Rogers. But the trial court has discretion as to retroactivity. I think that is clear in the statute. And the trial court, in my opinion, in the first appeal, exercised its discretion correctly and only made it retroactive to March 1, 2016. I didn't appeal that issue. Then this issue goes back down, and now we've made it retroactive from September 2014 all the way through March of 2016 and said, hey, Mr. Lightsey, write a check for $36,000. And that's what the second prong, the second issue of this appeal relates to is, okay, that's the issue. That issue of that net income is never decided, and I have gone through, and the trial court on remand should have addressed what the income was in that September 2014 through March 2016 period. And that issue, I think, is very interesting, and it goes to the third prong of the brief, in that this court in its decision indicated that the trial court was not to consider in exercising its discretion as to retroactivity, was not to consider the delay, which is a case in remarriage of purple. Well, not to consider the fact that your client didn't have anything to do with the delay. Again, I stand corrected. And I apologize. I tend to misspeak sometimes. I do the best I can to be as clear. Bottom line, though, in that retroactivity analysis, the trial court in considering this health court's mandate found that it had no discretion as to retroactivity. And it's a primary issue of this appeal that that is an error, that the trial court should have considered retroactivity, and it did have discretion. That is an exceedingly narrow, and part of this appeal, exceedingly narrow position for the trial court to take, that it wasn't to use discretion as to retroactivity for this large $36,000 arrearage. And so where we run into problems with that period is the waiver issues, even if the trial court was inclined to find waiver or log the case, they don't apply to that section. Well, counsel, tell me what it is that the trial court said or did that leads you to make the argument that it didn't believe it had discretion with respect to retroactive support? I cite specifically in the reply brief for the trial court's exact statements when he did exactly say that. And I can cite it to you, but bottom line, he says verbatim, I don't have discretion. I read this, aren't they telling me I have to have retroactive? It is specifically... What page of your reply brief? Page... Page 10, the trial court's narrow interpretation of proceedings on remand is clearly shown in the record. Why would they tell me to do a global recalculation when they recalculated it for me? And then... Okay. There is a statement by the court specifically as to retroactivity. Well, what you say is the statement of a directive doesn't state or imply anything about having discretion about anything. You're referring to the trial court using the directive, but that appears to be a real stretch, counsel. Well, page 7 of the appellant's brief, I cite to the record at 685. In the courts, this is the trial court's statement. Because the court did not go as far as to say not analyzing things or not looking at the propriety of how it was done, which either means one of a couple things, and I'm not going to speculate, it means go do it, redo the entire thing like you're suggesting, or it means Mr. Passwater's reply should have brought this up or didn't or potentially means other things. I'm not going to guess on that. But don't you think they would have said... Bottom line, in terms of retroactivity, there's just simply nothing in terms of the trial court's statements that are consistent with an open-ended or a broad interpretation of the retroactivity or calculation of support. And when it goes to retroactivity, I don't know that the Rule 23 order interprets and went through the Supreme Court's decision in remarriage of Peterson where it said that any notice, and basically the way it reads, at least how the trial court seems to read it, is that the date of notice that there was no discretion, had to go back to the date of filing, September 2014. And I think that the trial court should have discretion as for retroactivity in the context of a motion to modify. Mr. Fleisig continued to pay child support on the old issues, litigated the issue in good faith, and very simply... Counsel, I'm sorry, you're out of time. You will have some additional time on rebuttal if you desire. Thank you. Ms. De St. Bob? Thank you, Your Honor. I represent Caroline Webb. I think the key issue that this court needs to determine in this case is the standard of view. The standard of view on remand consists of two questions. First, whether the trial court exercised its discretion within the bounds of the mandate, and that's subject to no vote review. Then, if the trial court acted within the bounds of the mandate and exercised its discretion within the bounds of the mandate, that's subject to an abuse of discretion standard. And if the public court gave general instructions to the trial court, then the issue is whether or not the trial court exercised its discretion within the bounds of the mandate, again, abuse of discretion. In this case, this court gave general instructions. Basically, its mandate is contained in two paragraphs of this appellate court opinion. In paragraph 41, the appellate court directed the trial court to conduct a global recalculation of the support income because with its discovery of a mistake that had been made not only by petitioner and respondent and the trial court, nobody noticed that, this court's correspondent found the error on its own. And since it came up with a value for support income that was substantially lower, it ordered a global recalculation of income. With regard to the retroactivity, this court, in paragraph 50 of its opinion, said, on remand in exercising its discretion, the court should not take into account any delay. So abuse of discretion applies to both issues. And in its opinion, the trial court's opinion, which is found in A260 of the appellant's brief, the trial court clearly recognizes that it has discretion to conduct a global recalculation of income. And it did. And what it did was petitioner's counsel raised the issue, the fact that because of the court came up with a new calculation of income, the petitioner noticed, we noticed, that the court did not apply the deductions that apply to the new income. And that's why petitioner submitted in a petition for rehearing and then immediately on remand the assertion of the new evidence that the FIN plan should apply and the FIN plan deductions should apply. So that was new evidence, so to speak. But that FIN plan calculations are provided by statute and by regulation, so it's not new evidence. On the other hand, with regard to what... So, counsel, you say that it's new evidence. Yes. So then how did the trial court consider it if the agreement of the parties was and the understanding of the court was it would make its decision based on the evidence previously submitted? Because by the time that the trial court made that assertion, the new FIN plan calculations had already been submitted. How were they submitted? They were submitted in the remand bench brief. And Mr. Lightsey did not object to those findings. No objection whatsoever. On the other hand, and it's also very important to recognize, Carolyn Webb could not have asserted that FIN plan on appeal because on appeal, everybody agreed that the support income was $3,000. The issue of what the deductions were only became material after this court found sui sponte, that there was a new level of support income that was substantially lower. And so obviously, if the income is substantially lower, the deductions, the deductions, the tax deductions have to match. And so that's why Carolyn Webb could assert the new FIN plan just to do the bureaucratic calculation of what the tax deductions were. On the other hand, what Mr. Lightsey is suggesting in this case is a whole new set of evidence, which he could have raised at the trial court level, but didn't. He could have raised it on appeal, but he didn't. He could have raised it even in the trial court level, but he didn't. He stipulated that the evidence should be based on what was already in the record. And here, what Mr. Lightsey is contending that the trial court should do is that the trial court needed to learn on its own what is the tax treatment of non-statutory stock options. It's one thing to talk about a FIN plan, which is set forth in the regulations, but saying that the trial court has to educate itself on what these tax treatment of stock options are is inadmissible. It's inadmissible evidence. You can't expect a busy trial court judge to try and research IRS regulations and hearsay fidelity bank records when there's never been a witness to explain what that means. Case law, In re Rudi and In re Colangelo both say that if you're going to submit unsworn statements in a summary judgment or unauthenticating tax statements, you can't do it. Now, it would be one thing if Mr. Lightsey had said, okay, the court ordered global recalculation of income. I want to present a witness, an accountant that will present all these calculations. That would be one thing. That would have been in balance of the mandate, but he didn't do it. And the trial court recognized that it had the authority, in its opinion, to do a global recalculation, but it elected not to do it because it believed that Mr. Lightsey had waived that option. He could have done it before. He could have even done it in the trial court by presenting a new witness, but he didn't. Is there any discussion by him and the desirability to clarify this to present some additional evidence on this point, as you just talked about? Yes. Carolyn Webb raised the question about there needs to be an expert witness, and there was, and Mr. Lightsey has offered no authority indicating that he can get by simply by arguing from his finality tax advice or IRS hearsay guidance what that is. You need a witness. Well, going back to my experience as a trial judge in cases like this, it seems to me that there's no universal rule that would apply to documentary evidence of this kind. That is, there's some documents with regard to tax matters or financial records which even for me might have been sufficiently clear as a trial court in the immediate clarification, and others that, as you suggest, aren't particularly meaningful to the trier of fact unless something is presented. Was there any discussion about this dichotomy by the court? For instance, did the court indicate, gee, I'm not sure what this all means in the absence of some clarifying evidence? Well, certainly Ms. Carolyn Webb raised that in her reply briefs on remit, but also the trial court took the position, why didn't you raise that issue before? I mean, Mr. Lightsey certainly could have raised it on appeal or could have presented a witness because obviously you're going to have stock exercise prices. You're going to have to have dates, et cetera, and you can't expect a trial court judge to do all that work on its own. Well, that's, I suppose, my point. It seems to me that there might be some trial court judges who, based upon their experience, would be able to do it. But did this judge indicate, what am I supposed to make of that, for instance, or to alert the parties on remand that this might be evidence in the record but I'm going to have difficulty making any sense of it? Well, I think the trial court judge took the position that there was a forfeiture and waiver because of the fact that certainly Mr. Lightsey could have raised it on appeal. He could have raised it in a petition for a hearing. He could have... How about on remand? On remand, if he had produced a witness to present these facts and figures, these figures are... I mean, I can't understand myself trying to figure it out. There's no witness to portray what those stock option prices are. You need a witness. Counsel, do you agree that basically the trial court said, well, I considered it income in my initial calculation. The appellate court didn't criticize the fact that I did that. And opposing counsel didn't appeal this, didn't raise this issue before. So, as you indicated, the trial court was of the opinion, this has been forfeited, I'm fine on including this as part of my global recalculation, that I don't have to change that aspect of how I'm calculating the income. I agree with you 100%. Absolutely. I think the trial court judge recognized that and said, no, I'm not going to bother with this. You already had the opportunity. You didn't do it. And, you know, it's just elementary. If you don't raise a point on initial appeal or whatever, it's forfeited. Well, I ask that question because a few moments ago, you said that the trial court did not do a global recalculation. And I want to make sure that's the statement you want to make. I mean, in my view, it appears the trial court did do a global recalculation, but, once again, considered the stock option those income. I believe the trial court did do a global recalculation. If you look at the first page of its opinion at A260, it says it did do a global recalculation of income and adopted the thin plan submitted without objection by Ms. Webb and declined to adopt the other theory that Mr. Leitze was advancing for the first time on Riemann. And that's it. With regard to the issue of retroactivity, the trial court clearly acknowledged that it had discretion, and the proof is in the pudding. If you look at page A263 of its opinion, when it talks about retroactivity, it states, yes, I'm following the public court's direction. I'm not going to consider delay. But then the trial court went into additional factors, which indicated that it had discretion. And, in fact, the trial court said that the reason that I'm going to order it retroactive is because the evidence showed that Mr. Leitze was able to afford two homes and country clubs and golf clubs and had the income to pay retroactively. All of those factors...